UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| LUISA AVILES RIVERA, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>PROFESSIONAL ACCOUNT MANAGEMENT, LLC,<br><br>　　　　　　Defendant. | Case No.: 20-cv-1114<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.  This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.  The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant's principal place of business is located in this District.

## PARTIES

3.  Plaintiff Luisa Aviles Rivera is an individual who resides in Dane County, WI.

4.  Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5.  Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that Plaintiff engaged in a consumer credit transaction.

6. Defendant Professional Account Management, LLC ("PAM") is a domestic limited liability company with its principal place of business located at 633 West Wisconsin Avenue, Suite 1600, Milwaukee, WI 53203.

7. PAM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. PAM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. PAM is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

10. PAM is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about July 22, 2019, PAM mailed a debt collection letter to Plaintiff regarding an alleged debt owed to the "Illinois State Toll Highway Authority" ("ISTHA"). A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced in Exhibit A was incurred as a result of Plaintiff's use of Illinois toll roads while travelling for personal, family, and household purposes.

13. Consumers have a seven-day "grace period" after using an Illinois Tollway road during which the consumer may pay the toll with no added fees. *See* https://www.illinoistollway.com/unpaid-tolls.

14. At the time she incurred the tolls at issue, Plaintiff intended to make the required payments, but Plaintiff was unable to make her payments electronically within the 7-day grace

2

period. Plaintiff's use of the Illinois Tollway was therefore a consensual consumer transaction. *See Franklin v. Parking Revenue Recovery Servs.*, 832 F.3d 741 (7th Cir. 2016); *see also Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 842 (E.D. Va. 2015) (holding failure to pay a toll fee to be a debt under the FDCPA) (citing *Franklin*, 832 F.3d 741).

15. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

16. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

17. Upon information and belief, Exhibit A is the first written communication Plaintiff received from Defendant in reference to the alleged USC debt referenced in Exhibit A.

18. Exhibit A contains language that largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the consumer along with, or within five days of, the initial communication:

> Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, we will assume this debt is valid. If you notify us in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of us in writing within 30 days after receiving this notice we will provide you with the name and address of the original creditor, if different from the current creditor.

19. Exhibit A also includes the following text:

If you are an I-PASS or E-ZPass customer, you may be eligible to pay a settlement amount as outlined by the Illinois Tollway. If you believe you are eligible, please call 800-UC-IPASS (800-824-7277) and a customer service representative will assist you.

20. The statement "If you are an I-Pass or E-ZPass customer, you may be eligible to pay a settlement amount as outlined by the Illinois Tollway" are false, deceptive, and misleading to the unsophisticated consumer because it suggests that the only consumers who may be eligible for a settlement are those consumers who are I-Pass or E-ZPass customers.

3

21. In reality, ISTHA offers the possibility of "Non-Standard Settlements" to all consumers. A copy of the non-standard settlement application available on ISTHA's website is attached to this Complaint as Exhibit B.

22. Once an account has gone to collection, ISTHA policy confers settlement authority to third-party debt collectors.

23. Upon information and belief, PAM regularly enters into settlement agreements with consumers such as Plaintiff on behalf of ISTHA in the regular course of business. *See Al v. Van Ru Credit Corp.*, No. 17-cv-1738-JPS, 2018 U.S. Dist. LEXIS 164086, at *5-7 (E.D. Wis. Sept. 25, 2018) (misleading representations about a debt collector's settlement authority is actionable under the FDCPA).

24. Plaintiff was confused and misled by Exhibit A.

25. The unsophisticated consumer would be confused by Exhibit A.

26. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

### *The FDCPA*

27. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the

debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist.

5

LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

28. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

29. Misrepresentations of the character, amount or legal status of any debt, including language confusing or obscuring the name of the creditor, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information.");*Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore*

*Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

30. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

31. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of---the character, amount, or legal status of any debt."

32. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt.

### *The WCA*

33. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

34. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

35. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

36. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

37. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

38. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

39. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

40. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

41. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

42. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

43. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I -- FDCPA

44. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

45. By stating "If you are an I-Pass or E-ZPass customer, you may be eligible to pay a settlement amount as outlined by the Illinois Tollway," Exhibit A includes representations which are false, deceptive, and misleading to the unsophisticated consumer because even consumers who are not I-Pass or E-ZPass customers may be eligible for a non-standard settlement.

46. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10).

9

## COUNT II – WCA

47. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

48. PAM is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

49. By stating "If you are an I-Pass or E-ZPass customer, you may be eligible to pay a settlement amount as outlined by the Illinois Tollway," <u>Exhibit A</u> includes representations which are false, deceptive, and misleading to the unsophisticated consumer because even consumers who are not I-Pass or E-ZPass customers may be eligible for a non-standard settlement.

50. <u>Exhibit A</u> violates the FDCPA.

51. Defendants violated Wis. Stat. §§ 427.104(g) and 427.104(h).

## CLASS ALLEGATIONS

52. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form of <u>Exhibit A</u> by Defendant that sought to collect an alleged debt, (c) incurred for personal, family, or household purposes, (d) between July 21, 2019 and July 21, 2020, inclusive, (e) and the letter was not returned by the postal service.

53. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

54. Plaintiff's claims are typical of the claims of the members of the Class. All are based on the same factual and legal theories.

55. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer credit and debt collection cases.

56. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

57. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 21, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com